AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A white 2003 Ford Mustang, VIN<br>1FAFP42X83F377125, bearing Arizona<br>license plate 3TANG | )<br>)<br>)  Case No.   21 - 3156 MB<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Arizona_____
*(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*
See Attachment B, incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    August 20, 2021
                                                                                        *(not to exceed 14 days)*
☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been
                                                                            established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty in the District of Arizona_____ .
                        *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
                                                    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    August 6, 2021 @ 12:22 PM          M Morrissey
                                                                                            *Judge's signature*

City and state:    Phoenix Arizona                          Michael T. Morrissey, U.S. Magistrate Judge
                                                                                    *Printed name and title*

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

    *I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

Date: _____

_____
Executing officer's signature

_____
Printed name and title

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

A White 2003 Ford Mustang, VIN 1FAFP42X83F377125, bearing Arizona license plate 3TANG.

## ATTACHMENT B

## PROPERTY TO BE SEIZED

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license), and 18 U.S.C. § 924(d)  (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)); and, as further described in the affidavit of probable cause including:

1.   Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes;

2.   Any ammunition and components including, bullets, brass, casings, boxes, and cases;

3.   US Currency;

4.   Concealed Weapons Permit.

5.   Cocaine, or any other illicit drug

6.   The following records relating to the violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license) and 18 U.S.C. § 924(d)  (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)):

   a.   Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts;

   b.   Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts;

c.    Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition;

d.    Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons; and,

e.    Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

6.    Records indicating occupancy, residency, rental or ownership of the search location, including utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys;

7.    Any and all records pertaining to the rental of self-storage units and post office boxes or mailboxes;

8.    Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this attachment.  For any computer or electronic storage medium whose seizure

is otherwise authorized by this warrant, and any computer or electronic storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

      a.     Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

      b.     Call details including call history, duration of calls, text messages, and text message history;

      c.     Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of export-controlled items, to include e-mails and attached files, text messages, any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

      d.     Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

      e.     Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

      f.     Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms

that the user entered into any Internet search engine, and records of user-typed web addresses;

g.      Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to crime under investigation and to the user of the Electronic Storage Device;

h.      Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

i.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

j.      Evidence of the times the Electronic Storage Device was used;

k.      Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

l.      Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m.      Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n.      Contextual information necessary to understand the evidence described in this attachment; and,

o.      Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

9.    Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.  21-3156MB |
| A white 2003 Ford Mustang, VIN | ) | |
| 1FAFP42X83F377125, bearing Arizona | ) | |
| license plate 3TANG | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A, incorporated by reference.

located in the _____ District of _____ Arizona _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 922(a)(1)(A) | Engaging in the business of selling firearms without a license |
| Title 18, U.S.C. § 922(a)(6) | False statement material to the acquisition of a firearm from a licensed dealer of firearms |

The application is based on these facts:
See attached Affidavit, incorporated by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____*Brett Day*_____
Reviewed by Brett A. Day, AUSA

_____
*Applicant's signature*

**Lowell Farley, ATF Special Agent**
*Printed name and title*

Sworn to and signed electronically.

Date: __August 6, 2021__

_____
*Judge's signature*

City and state:  Phoenix, Arizona

**MICHAEL T. MORRISSEY, U.S. Magistrate Judge**
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

A White 2003 Ford Mustang, VIN 1FAFP42X83F377125, bearing Arizona license plate 3TANG.

## ATTACHMENT B

### PROPERTY TO BE SEIZED

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license), and 18 U.S.C. § 924(d)  (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)); and, as further described in the affidavit of probable cause including:

1.   Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes;

2.   Any ammunition and components including, bullets, brass, casings, boxes, and cases;

3.   US Currency;

4.   Concealed Weapons Permit.

5.   Cocaine, or any other illicit drug

6.   The following records relating to the violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license) and 18 U.S.C. § 924(d)  (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)):

   a.   Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts;

   b.   Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts;

c.  Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition;

d.  Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons; and,

e.  Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

6.  Records indicating occupancy, residency, rental or ownership of the search location, including utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys;

7.  Any and all records pertaining to the rental of self-storage units and post office boxes or mailboxes;

8.  Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this attachment.  For any computer or electronic storage medium whose seizure

is otherwise authorized by this warrant, and any computer or electronic storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

    a.    Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.    Call details including call history, duration of calls, text messages, and text message history;

    c.    Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of export-controlled items, to include e-mails and attached files, text messages, any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

    d.    Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

    e.    Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    f.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms

that the user entered into any Internet search engine, and records of user-typed web addresses;

g.     Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to crime under investigation and to the user of the Electronic Storage Device;

h.     Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

i.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

j.     Evidence of the times the Electronic Storage Device was used;

k.     Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

l.     Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m.     Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n.     Contextual information necessary to understand the evidence described in this attachment; and,

o.     Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

9.     Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lowell I. Farley, Jr., being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     This affidavit is submitted in support of an application for a warrant to search the following property, which is further described in Attachment A, for evidence of a violation of Title 18, United States Code (U.S.C.) § 922(a)(1)(A) engaging in the business of dealing in firearms without a license; Title 18, U.S.C. § 922(a)(6), false statement material to the acquisition of a firearm; and Title 18, U.S.C. § 924(a)(1)(A), knowingly making any false statement with respect to the information required by federal law to be kept by the holder of a Federal Firearms License (FFL): a 2003 White Ford Mustang, Vehicle Identification Number (VIN) 1FAFP42X83F377125, bearing Arizona license plate 3TANG (hereinafter **SUBJECT VEHICLE**).

2.     I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) and have been since March 2005.  I am graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP) and a graduate of the ATF National Academy Special Agent Basic Training (SABT) programs in Glynco, Georgia. Additionally, I have additional training as an interstate nexus expert in the determination of place of manufacture of firearms and ammunition and determining whether such have moved in or traveled in interstate commerce and am a recognized expert of such in the United States District Court for the Southern District of Texas and for the District of Arizona. As such, I am an officer of the United States who is

1

empowered by law to conduct investigations of and to make arrests for offenses, particularly those laws found in Title 18 of the U.S.C.. I am currently assigned to the Phoenix Field Division in Phoenix, Arizona. As an ATF SA, I have conducted investigations targeting individuals and groups engaged in acts, conspiracies, plots, plans, and various violations of the statutes enacted within the Gun Control Act of 1968 (GCA), Title 18, U.S.C., Chapter 44, and of the statues enacted within the National Firearms Act of 1934 (NFA), Title 26, U.S.C., Chapter 53. I have experience in all aspects of conducting such investigations to include, interviewing defendants, witnesses, and informants, utilizing physical and electronic surveillance techniques, and writing and executing search and arrest warrants. I have extensive experience in processing crime scenes and the identification, collection, processing, and preservation of evidence for use in federal criminal investigations. Prior to joining ATF, I graduated from the University of Florida with Bachelor and Master of Science degrees in Decision & Information Sciences and worked as a software engineer for Motorola and as a systems engineer for Nippon Telephone & Telegraph (NTT).

3.      My training in law enforcement includes agency specific training in all aspects of conducting federal criminal investigations, including the planning, preparation, and execution of search warrants. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, U.S.C. § 2510(7), authorized to conduct investigations into alleged violations of federal law.

4.      Through my experience and training, I know that it is a violation of federal

2

law for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate of foreign commerce according to Title 18, U.S.C. § 922(a)(1)(A).

5.      Through my training and experience, I know that it is a violation of federal law for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false of fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition according to Title 18, U.S.C. § 922(a)(6).

6.      Through my training and experience, I know that it is a violation of federal law for any person who knowingly makes a false statement or representation with respect to the information required by federal law to be kept in the records of an FFL according to Title 18, U.S.C., U.S.C. § 924(a)(1)(A).

7.      This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all my knowledge of or investigation into this matter.  The statements set forth in this affidavit are based upon my investigation to date, my experience, my training, and other reliable sources of information relative to this investigation.

3

## PROPERTY TO BE SEARCHED

8.     The property to be searched is described in Attachment A, incorporated

herein by reference.

## ITEMS TO BE SEIZED

9.     The items to be seized are described in Attachment B, incorporated herein

by reference.

## PROBABLE CAUSE

### Introduction

10.     As of June 2021, ATF has been investigating the activities of

WHITEHEAD regarding his violations his violations of Title 18, U.S.C. § 922(a)(1)(A),

engaging in the business of dealing in firearms without a license; Title 18, U.S.C. §

922(a)(6), make a false statement to a licensed dealer material to the acquisition of a

firearm; and Title 18, U.S.C. § 924(a)(1)(A), knowingly making a false statement or

representation with respect to the records required by federal law to be kept by an FFL.

As described more fully below, ATF's investigation shows that during the past few

months, WHITEHEAD has been acquiring numerous firearms with the specific intent to

resell the firearms to individuals as an unlicensed dealer of firearms.  More recently,

WHITEHEAD, after being advised personally and served with a written cease-and-desist

letter by Your Affiant, has continued to rapidly acquire large numbers of firearms and

advertise them for sale on various online firearm marketplaces.  During the service of that

cease-and-desist letter, WHITEHEAD admitted to engaging in the unlicensed business of

4

selling firearms, advised your Affiant he understood the warnings he received and stated
he would abide by them. Yet, WHITEHEAD has since purchased thirty-seven (37)
firearms from local FFLs.

### Background

11.     In June 2021, WHITEHEAD came to the attention of ATF because
between the dates of February 8, 2021, and June 13, 2021, WHITEHEAD acquired
approximately seventy-three (73) firearms from approximately ten (10) Phoenix area
businesses. Each firearms transaction involved the purchase of multiple handguns (i.e., a
pistol or revolver).  WHITEHEAD's purchase of seventy-three (73) firearms consisted of
twenty (20) Multiple Sale purchases. An investigation was opened into WHITEHEAD as
his behavior is consistent with that of a person actively engaged in re-selling firearms
shortly after acquiring them.  Additionally, WHITEHEAD was acquiring duplicate
firearms of the same make, model, and caliber which further supports WHITEHEAD is
not acquiring the firearms for personal use or to enhance a personal collection of
firearms.  Finally, many of the firearms WHITEHEAD has purchased are makes and
models of firearms commonly sought after by persons associated to criminal street gangs
and/or persons prohibited from purchasing and possessing firearms pursuant to Title 18,
U.S.C. § 922(g)(1)-(9).

12.     On June 25, 2021, ATF learned that WHITEHEAD had two active sales
listings on GunsAmerica.com, an online marketplace for firearms, ammunition, and
firearm accessories, and one inactive listing for a 9mm pistol that was described as

5

"never fired," which had since been sold. In the inactive listing for the 9mm pistol which had been sold, WHITEHEAD's name, Jacob Dean WHITEHEAD is listed on the ad, and he describes himself as an independent private seller of firearms and states he does not have an FFL. The active listings were for one AR-15 style pistol chambered in .300 Blackout caliber and for a batch of 7.62 x 39 mm and 5.56 x 45 mm caliber ammunition. The listed ammunition is the caliber of ammunition used by AK-47 style rifles/pistols and AR-15 style rifles/pistols, respectively. The AR-15 style pistol chambered in .300 Blackout in the GunsAmerica advertisement appears to have a serial number whose first characters match the first characters of an AR-15 style lower receiver that WHITEHEAD purchased from Tactical Studio, the holder of an active FFL located in Glendale, Arizona, on April 29, 2021. WHITEHEAD advertised the weapon for sale at GunsAmerica.com as having been built up into a complete weapon configured as an AR-15 style pistol and was selling the pistol for $3000.00. WHITEHEAD includes his mobile phone number as 623-294-2511 in the listing.

13.    On that same date, your Affiant attempted to contact WHITEHEAD via telephone and text message, identified himself as an ATF Special Agent and asked WHITEHEAD to return his call. On same date, a short time later, WHITEHEAD called your Affiant. Your Affiant asked WHITEHEAD if he was at his residence. WHITEHEAD was evasive and did not want to reveal his whereabouts. Your Affiant advised WHITEHEAD he needed to meet him in person to discuss various firearms purchases he had made that had recently come to the attention of ATF. WHITEHEAD

6

asked your Affiant if he was going to issue him a cease-and-desist letter to which your Affiant replied in the affirmative. WHITEHEAD agreed to meet your Affiant at a Fry's gas station at the southeast corner of Thunderbird Road and N. 59th Avenue in Glendale, Arizona, which your Affiant knew to be close to WHITEHEAD's residence.

14.     Your Affiant waited with SSA Sanks in the general vicinity to provide scene security until WHITEHEAD and another unidentified White male arrived. Your Affiant identified himself as an ATF SA and showed his ATF credential.  Your Affiant advised WHITEHEAD he was not in custody and was free to leave at any time.  The unidentified White male with WHITEHEAD withdrew and went into the Fry's grocery store nearby. Your Affiant advised WHITEHEAD that ATF had recently learned of his numerous, recent, multiple-sale purchases of handguns. Your Affiant asked WHITEHEAD if he still had the firearms in his possession. WHITEHEAD replied he had sold almost all the firearms he had purchased and was doing it as a business to make money. WHITEHEAD stated he only kept some bills of sale but was checking the person's identities to make sure they were residents of Arizona.

15.     Your Affiant advised WHITEHEAD his activities constituted a violation of federal firearms laws and explained that a Federal Firearms License is required to engage in the business of dealing in firearms.  Your Affiant advised WHITEHEAD of the definition of engaging in the business of dealing in firearms as defined in Title 18, U.S.C. § 921(a)(21).  Your Affiant further advised WHITEHEAD that his numerous repetitive firearms acquisitions and subsequent sales rose to the standard of dealing in firearms.

7

Your Affiant further explained to WHITEHEAD the concept of livelihood and profit as defined in Title 18, U.S.C. § 921(a)(22). Your Affiant explained to WHITEHEAD that he is functioning like a firearms dealer and as such needs a License. Additionally, Your Affiant explained the importance of FBI NICS background checks to help keep guns from falling into the wrong hands and that many violent crimes such as mass shootings occur when firearms fall into the wrong hands.

16.    WHITEHEAD acknowledged that he had been told by other persons, including at least one holder of an active FFL, that he needed to obtain his own FFL or else the ATF would likely approach him and admonish him to cease-and-desist from unlicensed dealings in firearms.

17.    On that same date, your affiant served WHITEHEAD with a cease-and-desist letter for unlicensed dealing in firearms and with a cease-and-desist for straw purchasing of firearms. Your Affiant explained to WHITHEAD he was being served with a cease-and-desist letter for straw purchasing because Section B, Question 21a, on the ATF Form 4473 asks the potential buyer if they are the actual buyer of the firearm listed on this form and is followed with a warning stating that if you are not the actual buyer of the firearm the dealer cannot transfer the firearm to you. Section B requires the potential buyer of the firearm to sign and certify that the answers and information provided on the ATF Form 4473 are true and correct and warns that making false statements on the ATF Form 4473 is a violation of federal law.  Lastly, Section B requires the purchaser to certify that she/he "understand[s] that the repetitive purchase of firearms for the purpose

8

of resale for livelihood and profit without a Federal firearms licensed is a violation of Federal law."

18.    WHITEHEAD admitted that since his separation from the United States Army for medical reasons he felt the firearms business was a good fit for him. Your Affiant advised WHITEHEAD to obtain an FFL and to go to ATF's website to learn more about the process. Your Affiant provided WHITEHEAD his ATF business card and offered to put in him touch with personnel from ATF's regulatory component. WHITEHEAD stated he would likely pursue his own FFL.

19.    WHITEHEAD advised your Affiant he understood the warnings he received and stated he would abide by them.

20.    Following that meeting, Your Affiant learned that WHITEHEAD visited Tactical Studio, the holder of an active FFL in Glendale, Arizona, on July 28, 2021. Your Affiant further learned that WHITEHEAD told the Tactical Studio employees that he wanted to purchase as many cheap guns as possible, specifically the Taurus, model G2C, 9 x 19 mm caliber pistol. WHITEHEAD advised he had recently become a partner at ROE ARMORY, the holder of an active FFL also located in Glendale, Arizona. The Tactical Studio employees challenged WHITEHEAD's claim saying that if such were true, that Tactical Studio could do an FFL-to-FFL transfer to ROE ARMORY without an ATF 4473 transfer to WHITEHEAD.  Finally, the Tactical Studio employees told WHITEHEAD they would only sell him one (1) firearm at that time as they felt his story was suspect.

9

21.   As WHITEHEAD was getting out his wallet/ID to pay for the firearm, a baggie containing narcotics fell out of WHITEHEAD's pocket onto the floor. A two-year old little girl picked up the baggie and attempted to put it into her mouth. Her father intervened and complained to the owner of Tactical Studio. The owner of Tactical Studio escorted WHITEHEAD to the front of the store, handed him his ID, showed him the baggie he dropped, and told him to leave the store and not to return. The owner of Tactical Studio notified the Glendale Police Department (GPD) and ATF. GPD responded, took a report, and seized the suspected narcotics. The substance field tested positive for the presence of cocaine. Your Affiant was advised this incident is reference by GPD Departmental Report (DR) 21-106945.

22.   Through my training and experience I know it is a violation of federal law for a person who is an unlawful user of or addicted to any controlled substance, such as cocaine, to receive or possess any firearm or ammunition that has moved in interstate commerce according to Title 18, U.S.C. § 922(g)(3).

23.   On July 30, 2021, I learned that WHITEHEAD has two active listings on ArmsList.com, an online marketplace for firearms, ammunition, and firearms accessories. WHITELEAD lists his phone number, identifies himself as a private seller of firearms in Glendale, Arizona. Both listings are for AR-15 style firearms chambered in .300 Blackout caliber. One of the weapons is an AR-15 style pistol, is advertised as new in box, and the asking price is $550.00. WHITEHEAD also adds in this advertisement he wants to sell this firearm quick and needs cash. The second firearm is an AR-15 style

rifle, is advertised for sale, and references an additional thirty-seven (37) firearms for sale. Your Affiant also learned that WHITEHEAD has an active listing on GunsAmerica.com for a PTR 9 x 19 mm caliber pistol for sale. The asking price of this firearm is $2500.00. WHITEHEAD identifies himself on this as Jacob Dean WHITEHEAD, lists his phone number, and identifies himself as a private seller of firearms.

24.    On August 2, 2021, Your Affiant was notified by FBI NICS that WHITEHEAD was associated with three firearms transactions on August 1, 2021.  Two transactions were purchases made at US Republic Amory LLC, located in Phoenix, Arizona, and one transaction was a purchase made at Bear Arms, located in Scottsdale, Arizona.

25.    On August 3, 2021, I proceeded to US Republic Armory LLC, in Phoenix, Arizona, and spoke with the owner. I learned that WHITEHEAD had purchased three (3) pistols and three (3) shotguns on August 1, 2021, and three (3) pistols on August 2, 2021. Additionally, I learned that WHITEHEAD has purchased at least nineteen (19) pistols, shotguns, and lower receivers from US Republic Armory LLC during the period from July 9, 2021 through July 31, 2021.

26.    Additionally, the owner of US Republic Armory LLC informed that WHITEHEAD had told him that he (WHITEHEAD) recently received a warning letter from ATF alleging he was illegally dealing in firearms without a license. The owner of

11

US Republic Armory LLC told WHITEHEAD he should abide by ATF's warning and get his own FFL.

27.     On that same date, I proceeded to Bear Arms in Scottsdale, Arizona, and learned that WHITEHEAD had purchased three (3) pistols on August 1, 2021, and one (1) pistol on August 2, 2021.

28.     On that same date, I concluded that WHITEHEAD has acquired at least twenty-eight (28) firearms since he was served a cease-and-desist letter from your Affiant on July 9, 2021. I noted that many of the firearms referenced in WHITEHEAD's ArmsList.com advertisement for the AR-15 style rifle match the firearms he recently acquired from US Republic Armory LLC and from Bear Arms. Your Affiant noted that the AR-15 style pistol that WHITEHEAD is advertising on ArmsList.com has markings on it from US Republic Armory LLC.

29.     On August 4, 2021, Your Affiant received information that WHITEHEAD was attempting to make a purchase of six (6) firearms from U.S. Republic Armory. Your Affiant set up an interdiction to intercept WHITEHEAD and the purchase of the firearms at the FFL. At the FFL, Your Affiant observed WHITEHEAD and another individual leaving the business with firearms in the **SUBJECT VEHICLE**. WHITEHEAD and the individual entered the **SUBJECT VEHICLE** and departed from the FFL. Approximately a quarter-mile from the FFL, Phoenix Police Department conducted a traffic stop on the vehicle. Following the traffic stop, both WHITEHEAD and the other individual were detained for questioning and transported to the Phoenix Police Department Headquarters.

30.     Following the traffic stop, the **SUBJECT VEHICLE** was seized and is currently stored by ATF at a secure location. Believed to be inside the **SUBJECT VEHICLE** are the six firearms purchased by WHITEHEAD and the other individual as well as a large amount of U.S. Currency.

31.     In a post-*Miranda* interview, WHITEHEAD admitted to buying and selling approximately 200 firearms. WHITEHEAD admitted to using cocaine three-times per day since February. WHITEHEAD further admitted that on this occasion, he was buying three of the firearms for other individual he was with, and he believed that the other individual was working for a Mexican drug trafficking organization.

32.     A subsequent search of the WHITEHEAD's residence resulted in the seizure of 21 additional firearms.

## TRAINING AND EXPERIENCE – DIGITAL DEVICES/MEDIA

33.     Through my training and experience as an ATF SA, I have learned that many people keep records of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices. It has been my experience that unlicensed dealers of firearms who purchase firearms illegally will keep the contact information of the individual to whom he or she sells firearms for future sales and/or sales referrals from established customers. I know that much correspondence is via digital devices. I know that much correspondence between persons buying and selling firearms often occurs by e-mail or text message sent to and from digital devices. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.

13

34.     I know that online marketplaces such as Armslist.com and GunsAmerica.com are not a party to the firearms transaction and place the responsibilities on the buyers and sellers to conduct safe and legal transactions. As a result, users send electronic messages back and forth through Armslist.com to negotiate details including but not limited to, sales prices and locations.

35.     Therefore, based on my experience, I believe that it is probable that digital devices may contain text messages or e-mails between WHITEHEAD and other individuals discussing the possession, sale or transfer of firearms. In my experience it is common for unlicensed dealers of firearms to have photographs of firearms they or other individuals possess on their digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms. I also know that people keep receipts from sales and purchases of items related to firearms possession, including ammunition, holsters, etc.

36.     As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical

14

disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices. Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that data in digital form can be stored on a variety of digital devices and that during the search of a premises it is not always possible to search digital devices for digital data for a number of reasons, including the following:

i.    Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. There are so many types of digital devices and software programs in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched.

ii.    Digital data is particularly vulnerable to inadvertent or intentional modification or destruction. Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data. As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is essential to conducting a complete and accurate analysis of data stored on digital devices.

iii.    The volume of data stored on many digital devices will typically be so large that it will be highly impractical to search for data during the physical search of the

15

premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 500 or more gigabytes are now commonplace. Consequently, just one device might contain the equivalent of 250 million pages of data, which, if printed out, would completely fill three 35' x 35' x 10' rooms to the ceiling. Further, a 500 gigabyte drive could contain as many as approximately 450 full run movies or 450,000 songs.

      iv.    Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files saved to a hard drive can be stored for years with little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, i.e., space on a hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space, for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Similarly, files that have been viewed on the Internet are often automatically downloaded into a temporary directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they

are replaced with more recently downloaded or viewed content. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment. Recovery also can require substantial time.

v.     Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications and materials contained on the digital devices are, as described further in the attachments, called for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole. Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, e-mail programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the

17

attachment of peripherals, the attachment of USB flash storage devices, and the times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

      vi.    Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device. For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device. Evidence of the absence of particular data on a digital device is not segregable from the digital device. Analysis of the digital device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment, and can require substantial time.

      37.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## CONCLUSION

      38.    Based upon my training and experience, and the facts set forth herein, I submit that there is probable cause to believe that the items described in Attachment B

18

are evidence of violations of Title 18, U.S.C. § 922(a)(1)(A), engaging in the business of

dealing in firearms without a license; Title 18, U.S.C. § 922(a)(6), false statement

material to the acquisition of a firearm from a licensed dealer of firearms; and Title 18,

U.S.C. § 924(a)(1)(A), knowingly making a false statement or representation with respect

to the information required by federal law to be kept in the records of an FFL; will be

found in the property set forth in Attachment A.

LOWELL I. FARLEY, SPECIAL AGENT
Bureau of Alcohol, Tobacco, Firearms &
Explosives

Sworn to ~~and subscribed before~~ me this _telephonically_ ___6___ day of August 2021.

HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge

19